IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOY C REILY, Plaintiff | § | |
| | § | |
| | § | |
| -V- | § | Civil No. 2:17-cv-01145-B |
| | § | JURY DEMANDED |
| PGIM, INC. | § | |
| | § | |
| -and- | § | |
| | § | |
| RANDALL M KOB, | § | |
| | § | |
| Defendants. | § | |

PLAINTIFF'S FIRST AMENDED COMPLAINT

*TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:*

NOW COMES Joy C Reily, Plaintiff, and, pursuant to Federal Rules of Civil Procedure, Rules 15(a)(1)(B) and (c)(1)(C) respectively, files this, her First Amended Complaint, because Defendants interfered with her federally protected leave benefits and retaliated against her for attempting to avail herself of those federally protected leave benefits in violation of the Family and Medical Leave Act ("FMLA"), 29 USC 2601, *et seq*., and its implementing regulations, 29 CFR 825 *et seq*.

In support, Plaintiff respectfully shows the following:

I.
INTRODUCTION

Joy C Reily (hereafter "Reily" or "Plaintiff") was, around the time of the events described herein, a 17 year, full-time employee of PGIM, Inc. (hereafter "PGIM" or

"Defendant"). PGIM is an employer covered by the FMLA. Reily reported to a high level manager at PGIM named Randall M Kob (hereafter "Kob" or "Defendant"). Kob is an individual who is also deemed to be an employer under the FMLA with respect to his actions as described herein.

At the time of the events at issue here, in and around 2015 and into 2016, Kob was under considerable pressure in his job and Reily, as part of her job duties, was assigned to support him. In Spring of 2015, Kob informed Reily that he would not approve her taking any more paid time off (hereafter "PTO"), as he said there was too much work to be done.

Unfortunately, on Friday, May 29, 2015, Reily suffered a heart attack and had to be hospitalized, rendering her unable to work early the following week. That Sunday, May 31, after she was discharged from the hospital, Reily timely sent emails to Kob and her team indicating that she would be absent from work on Monday, June 1. However, Kob then caused a local police officer to show up at Reily's house and harass her. Reily complained to PGIM's human resources department that Kob was harassing her for taking time off. Kob was informed of Reily's complaint and thereafter embarked upon a campaign of imposing upon her a hostile work environment, which PGIM knowingly tolerated and which reached a crescendo by Summer of 2016, culminating in the constructive termination of Reily's employment.

Were it not for Kob's actions, as enabled by PGIM, in interfering with Reily's right to take FMLA leave for a serious medical condition and then retaliating against her for complaining to HR about his harassment of her through the imposition upon her of a hostile work environment, Reily would still be employed by PGIM today.

## II.
## PARTIES

1. Plaintiff Reily is an individual who is a citizen of the State of Texas and who resides in this judicial district.

2. Defendant Prudential Financial, Inc. is an out-of-state corporation doing business in Texas and can be served by serving its registered agent: Margaret M Foran, Chief Governance Officer, Senior Vice President and Corporate Secretary, 751 Broad Street, Newark, New Jersey 07102.

3. Defendant Randall M. Kob is an individual residing in Dallas, Dallas County, Texas and can be served at his residence located at: 3420 Marquette St., Dallas, Texas 75225.

## III.
## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court because this action arises under the FMLA. Defendant PGIM is doing business within and Defendant Kob resides within this judicial district, and jurisdiction would not offend traditional notions of fair play and substantial justice.

5. Venue is appropriate in this Court because the acts giving rise to this case occurred within the geographical jurisdiction area of this Court and this Division.

## IV.
## FACTUAL ALLEGATIONS

6. As of the time of the events described herein, in and around 2015-2016, Reily was a 17 year PGIM employee in the position of Associate Manager, Administration. As of the time

of the events described herein, Reily was employed with PGIM for over one year and had worked in excess of 1,250 hours for PGIM. For years 2015 through 2016, and at all relevant times herein, Defendant PGIM employed 50 or more employees each working day for 20 or more calendar workweeks at Reily's worksite and/or in other worksites within 75 miles thereof. At all relevant times herein, Defendant PGIM was engaged in commerce or industry affecting commerce. At the relevant times herein, Defendant Kob held several high level positions and roles with PGIM, including managing partner of the Prudential Capital Energy Partners group (hereafter "PCEP"). Kob had direct supervisory authority over Reily and he personally undertook the actions described herein that resulted in the interference with Reily's FMLA rights and retaliation against her for complaining about his interfering actions.

7. In early 2015, Kob was assigned significant responsibilities for soliciting investments in PCEP Fund. At the same time, Reily assumed additional responsibilities to administratively assist Kob in this endeavor. On April 16, 2015, Kob told Reily that he was not going to approve her taking any PTO going forward, stating that there was too much work to do relating to PCEP.

8. However, on the evening of Friday, May 29, 2015, Reily experienced a heart attack and was admitted to the hospital, remaining hospitalized until the evening of Sunday, May 31, 2015. That evening, upon returning home from the hospital, Reily sent Kob and her team an email indicating that she would be absent from work on Monday, June 1, 2015. Consistent therewith, Reily did not report to work on Monday, June 1, 2015, but rather she stayed home while recovering from the heart attack she had suffered. Reily's absence from work on Monday, June 1, 2015 qualified as FMLA leave.

9. In the early afternoon of Monday, June 1, 2015, a Mesquite, Texas police officer showed up at Reily's door and stated that he was requested by her employer to check up on her, requesting that she produce to him her driver's license. Shocked and stressed by this event, Reily telephoned Debbie Seidman (hereafter "Seidman) in PGIM's HR department and complained that she was being harassed by Kob for having to take that day off unexpectedly as a result of a serious, life threatening medical emergency she had just experienced. Seidman stated that she would talk to Kob and get back with Reily. Later that week, Seidman finally got back with Reily and told her that she had spoken to Kob, who she said admitted to asking the police department to check on Reily, claiming that he had never received any communication from her about being absent on June 1. Reily pointed out to Seidman that Kob's non-communication allegation was not true because she had sent an email to him and her team the evening of May 31st stating that she would not be at work on June 1, she knew that he saw her email, and complained that the police officer visit was actually him harassing her for taking PTO that day after telling her earlier that he did not want her taking any PTO time off. Reily told Seidman that she wanted Kob to stop harassing her. To Reily's knowledge, Seidman did nothing in response to her request that Kob stop harassing her. However, Siedman did make Kob aware that Reily had complained about him harassing her.

10. Kob subjected Reily to an ongoing hostile working environment. For example, on July 2, 2015, Kob denied Reily's request for two days of PTO in late July, telling her that he would not approve of any PTO until she completed certain tasks—tasks for which Reily had no direct responsibility. On Friday, July 17, 2015, Reily left work early upon learning that her mother had been taken to the hospital with a medical emergency; Reily's mother subsequently died that Sunday, July 19, 2015. The following week, Reily informed Kob that she would be

taking the three day of bereavement leave allowed to her under PGIM company policy on Thursday, Friday and Monday (July 23, 24 and 27). Incredulously, on Monday, July 27, Kob sent her a text on her cell phone demanding to know if she would be at work *that* day.

11. By this point, Kob had become cold, distant and hostile towards Reily. At her year end 2015 performance review discussion with Kob, he made it a specific point to comment negatively to her about the fact that she had complained to HR in 2015 about him. Reily had never experienced this kind of harassing and/or retaliatory treatment from a manager in her prior 17 years of employment at PGIM. Reily complained to Seidman after of the above performance review that Kob was retaliating against her as a result of the June 1, 2015 incident and the resulting complaints she had made to HR about him. To Reily's knowledge, HR did nothing in response.

12. Kob's anger and open hostility towards Reily continued into 2016 and culminated in her constructive discharge in Summer 2016. More specifically, Kob has well-known anger management issues. On June 27, Kob came unhinged and verbally attacked Reily over a binder he wanted to use at a conference call that had not yet been completed. Reily attempted to explain to Kob that the binder was in the process of being completed, that there were legitimate reasons why it had not yet been completed, but nonetheless it would be completed in time for his conference call. However, Kob remained aggressively angry, speaking to Reily in a harsh, accusatory and demeaning tone of voice, physically getting up into her personal space, and kept hurling false accusations at her. Exasperated, fearing for her safety by the intensity and physical manifestation of his anger and seeing no way out of his verbal assault, Reily told Kob that she would just leave by the end of July, just to get him out of her face and stop his verbal assault against her, which did result in him ending his verbal attack at that moment. Reily then

immediately complained to Seidman that Kob had just angrily attacked her and that she could not take working in that atmosphere anymore. The next day, Kob called Reily into a conference room and, again using an angry tone of voice and hostile up-close body language, demanded of Reily that she put her resignation in his hand by the end of that day, told her that he would not be sending out any kind of recognition note within PGIM about her company service or having a going-away happy hour or any other form of recognition as is customary in that office location for long-term employees leaving the company. Reily again immediately complained to Seidman of Kob's continuing hostile actions and his demands that she resign. Sensing that HR would not take any action against Kob in regards to his behavior despite her multiple complaints as described herein, Reily believed that she had no real choice but to deliver to Kob her resignation as he had angrily demanded of her, to be effective the end of July, 2016. To Reily's knowledge, HR did nothing in response to any of her complaints described herein.

13. Unfortunately, Kob could not let it go and he continued to escalate his verbal assaults against Reily well into July, 2016. In one final attempt to get Kob to stop, Reily contacted Seidman's HR manager, Marnie Garfinkle (hereafter "Garfinkle"). Reily was very upset and explained to Garfinkle that she just could not continue to work in this type of angry, hostile work atmosphere. Garfinkle told her that she could go home and that Seidman would be contacting her the following week about the situation. About a week later, Seidman called Reily and told her that she should consider retiring from PGIM in order to keep her benefits. Seeing no other alternative available to her given the unceasing hostile work atmosphere imposed on her by Kob, PGIM's repeated failure to do anything to stop it, and financially needing PGIM benefits to economically survive in the absence of a job, Reily reasonably believed that she had no reasonable choice but to submit her retirement papers to PGIM at Seidman's behest.

14. Reily's employment resignation submission and retirement resulted from PGIM's and Kob's ongoing hostile work environment against her and constructive discharge of her employment as caused by her taking FMLA leave and/or in retaliation for complaining about Kob harassing her for taking such FMLA leave. Were it not for Kob's actions as described herein, and PGIM's repeated failure to do anything about his actions despite Reily's many complaints to HR about his unlawful actions, Reily would still be employed with PGIM.

V.

*FIRST CAUSE OF ACTION*:
INTERFERENCE WITH PROTECTED BENEFITS IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

15. The allegations set forth in paragraphs 1 through 14 above are fully incorporated herein and apply to this cause of action.

16. Defendants are covered employers of Reily and via their aforementioned actions, interfered with Reily's FMLA rights as such rights are guaranteed by the FMLA.

17. As described above, Defendants' actions constitute unlawful interference with Reily's FMLA protected benefits under the FMLA.

18. As a result of Defendants' unlawful interfering actions, Plaintiff suffered damages.

*SECOND CAUSE OF ACTION*:
RETAILATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

19. The allegations set forth in paragraphs 1 through 14 above are fully incorporated herein and apply to this cause of action.

20. Defendants are covered employers of Reily and via their aforementioned actions, interfered with Reily's FMLA rights as such rights are guaranteed by the FMLA. When Reily complained within PGIM about such unlawful actions, Defendants retaliated against her by subjecting her to adverse employment actions.

21. As described above, Defendants' actions constitute unlawful retaliation against Reily in violation of the FMLA.

22. As a result of Defendants' unlawful retaliatory actions, Plaintiff suffered damages.

## VI.
## JURY DEMAND

23. Plaintiff exercises her right to trial by jury.

## VII.
## DAMAGES & PRAYER

For these reasons, and for each cause of action described above, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

A. Back pay, including wages and benefits from the time of Plaintiff's termination to time of trial.

B. Front pay, including wages and benefits from the time of trial into the future.

C. Cost of lost or replacement employment benefits and out of pocket expenses incurred as a result of loss of employment-offered benefits.

D. Liquidated damages for the willful violations of the FMLA.

E. Attorney fees and costs.

F. Pre- and post judgment interest at the maximum rate allowed by law.

G. Injunctive relief granting notice to employees of any judgment along with notice of their statutory rights to bring similar claims to the U.S. Department of Labor and state agencies, including their right to be represented by counsel.

H. Injunctive relief for monitoring and reporting FMLA violations.

I. Injunctive relief requiring training of employees requirements under the FMLA.

J. Injunctive relief of reinstatement or, alternatively, front pay.

*WHEREFORE,* premises considered, Plaintiff respectfully prays that Defendants be summoned to appear and that, following a trial on the merits, Plaintiff receive all relief requested as well as such other and further relief to which she is justly entitled.

Dated: August 7, 2017.

Respectfully submitted,

**LAW OFFICE OF DALE M. RODRIGUEZ**
555 Republic Drive, 2nd Floor
Plano, Texas 75074
Phone: 214-713-4665
Fax: 888-717-7542
dale@dmrlawoffice.com

By: /s/ Dale M Rodriguez
Dale M. Rodriguez
*Texas Bar No. 00788302*
*Florida Bar No. 0780081*

*Attorney for Plaintiff*

## *CERTIFICATE OF CONFERENCE*

Plaintiff is filing this, her *First Amended Complaint*, as a matter of right pursuant to Federal Rules of Civil Procedure, Rule 15(a)(1)(B) and, thus, no conference is required.

## *CERTIFICATE OF SERVICE*

On this 7th day of August, 2017 I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the ECF system. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5 (b)(2).

/s/ Dale M Rodriguez
Dale M. Rodriguez